IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2016

**STATE OF TENNESSEE v. CHRISTOPHER ALLEN**

**Appeal from the Circuit Court for Madison County**
**No. 15-387    Donald H. Allen, Judge**
_____

**No. W2016-00505-CCA-R3-CD  -  Filed February 24, 2017**
_____

The Defendant, Christopher Allen, entered a guilty plea to one count of aggravated burglary, a Class C felony, with sentencing to be determined by the trial court. At the sentencing hearing, the trial court found that the Defendant was a Range I standard offender and imposed a five-year prison sentence to be served consecutively with a prior eleven-month and twenty-nine-day sentence. The trial court also required the Defendant to pay restitution to his victim. The Defendant appeals the trial court's denial of alternative sentencing. We conclude that the trial court did not err in sentencing the Defendant to a term of imprisonment. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant District Public Defender, for the appellant, Christopher Allen.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant pled guilty to one count of aggravated burglary, a Class C felony. *See* T.C.A. § 39-14-403. During the plea hearing, the parties stipulated to the following factual basis for the plea:

> [On] May the 19th of 2015, [the Defendant] along with the codefendants, Mr. Lake and Mr. Starks, did go to the victim's residence … on Nowell Road in Medina, here in Madison County, Tennessee…[T]hey went to the front door and then two individuals went to the back while one remained in the vehicle. [The victim] did scream after two gained entry into her back patio area and that's when they then fled the scene. It caused about a little under $230 worth of damage to that home, but nothing was taken because she hollered at them.

> [The victim] called law enforcement. A short distance down the road, law enforcement stopped the vehicle with these three individuals in there. Mr. Starks was driving that vehicle. They did place them all under arrest because they matched the description that [the victim] had given as the individuals acting in concert there burglarizing her home. There was a small amount of marijuana that was found in the car that was addressed in the lower court and not this court.

> But, that's what the State would show at trial that [the Defendant] along with his codefendants did unlawfully enter a habitation without the effective consent of the [victim] in an attempt to commit theft of property.…

The trial court conducted its guilty plea colloquy and accepted the Defendant's guilty plea.

At the sentencing hearing, the State entered the Defendant's presentence report into evidence and asked the trial court to not rely on matters in the report that were dismissed or without disposition. The Defendant and the State agreed that the victim was entitled to $229.44 in restitution. The State argued that the Defendant should be sentenced as a Range I offender, serve three to six years in prison, pay restitution and court costs, and "refrain from any contact with [the victim]." The State requested that the court not impose the statutory fine for an aggravated burglary conviction.

The Defendant argued that although he was on probation at the time of the aggravated burglary, he "had accepted responsibility for his actions and [was] willing to pay restitution" and also requested the trial court not to impose a fine. The Defendant stressed that although he had "several misdemeanors, [there] were really two or three

offense[] dates in total." He presented evidence that he had employment and family in Nashville and that if he was not incarcerated, he could live under the supervision of his mother and help care for his infant daughter in Nashville. The Defendant pointed to a report that stated that returning to Jackson "seemed to have a triggering effect on him." The Defendant argued that the time he had served prior to the sentencing hearing constituted a "period of shock incarceration."

The trial court noted that the Defendant tested positive for marijuana on the day of the instant guilty plea submission hearing, which led the trial court to find that the Defendant had violated his then current probation for possession of marijuana, revoke the Defendant's bond, and order that he be held without bond pending the sentencing hearing. The trial court found that the Defendant caused significant fear and harm to the victim and her property and that the Defendant likely would have stolen the victim's property if the victim had not been at home to thwart the attempt. The trial court stated that it took under consideration the Defendant's "potential for rehabilitation and … his potential for treatment." The trial court also considered the victim's desire to see the Defendant face the maximum allowable sentence. The trial court found the Defendant to be a Range I, standard offender, which placed him in a sentencing range of three to six years for his Class C felony conviction. *See* T.C.A. § 39-14-403; *id.* § 40-35-105; *id.* § 40-35-112.

The trial court reviewed the enhancement factors in Tennessee Code Annotated section 40-35-114. First, the trial court gave "great weight" to the Defendant's prior criminal history, including his drug use. *See* T.C.A. § 40-35-114(1). Second, the trial court found that the Defendant was a leader in the commission of the aggravated burglary. *Id.* § 40-35-114(2). Third, the trial court found that "at least on two or perhaps three different occasions while [the Defendant] was already on probation, he has gone out and committed new offenses," which the trial court also considered with "great weight." *Id.* § 40-35-114(8). The record indicates that the Defendant was serving a term of probation offense and on release from the charges in this case for another when he failed a drug test and did not appear for a traffic related court appearance and booking. Fourth, the trial court gave "great weight" to the finding that the Defendant was already on probation during the time of the aggravated burglary against the victim. *Id.* § 40-35-114(13)(C). The court also noted that the Defendant received another probationary sentence coupled with "a period of shock incarceration" for a guilty plea conviction of theft under $500 and possession of marijuana which was the same probationary sentence that he was serving while he committed the aggravated burglary against the victim. The trial court found that the Defendant again violated his probation on the day of the guilty plea submission hearing by failing a drug screen. The court ultimately found that the Defendant "has been given at least three opportunities at probation over the last four years and unfortunately on each of the occasions when he has been granted some form of

-3-

alternative sentencing or probation, he has failed to complete his probation successfully." The trial court took the aforementioned series of facts to weigh the Defendant's appropriate sentence in light of his criminal history and whether he was "an appropriate candidate for probation."

The trial court found several mitigating factors that applied to the Defendant's sentencing. First, the trial court found that the Defendant did not "cause serious bodily injury to the victim." T.C.A. § 40-35-113(1). Second, the trial court credited the Defendant for pleading guilty and "accept[ing] responsibility." *Id.* § 40-35-113(13). Third, the trial court noted the Defendant's young age. *Id.* § 40-35-113(6). Fourth, the trial court found that the Defendant suffered from several physical and mental health problems, including post-traumatic stress disorder. *Id.* § 40-35-113(8). Finally, the trial court noted that the Defendant claimed he could not work full-time, he was on disability benefits, and he had no assets. *Id.* § 40-35-113(13).

The trial court found "that measures less restrictive than confinement have frequently and recently been applied to [the Defendant] without success," that the Defendant's incarceration would serve as "an effective deterrent to others who are likely to commit this same type of offense," that the Defendant's drug court assessment "indicate[d] really a lack of motivation to want to complete any type of treatment program," and that the Defendant's "lack of truthfulness indicates his poor potential for rehabilitation as well."

The trial court imposed a five-year prison sentence to be served consecutively with the sentence for which he was on probation at the time of the aggravated burglary. The trial court also ordered the Defendant to pay $229.44 in restitution, pay court costs, and "to stay away from the victim and the victim's property in this matter."

## ANALYSIS

The Defendant challenges the trial court's denial of alternative sentencing. The Defendant contends that various mitigating factors should have weighed in favor of alternative sentencing: his age, his child, his willingness to plead guilty, his willingness to "not contest the fact that he was on misdemeanor probation from Jackson City Court when he committed this crime," his potential for rehabilitation and treatment, and his "period of shock incarceration."

A trial court's decision regarding the length and manner of service of a sentence is reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences reflecting a proper application of the purposes and principles of the Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

-4-

Under *Bise,* "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706. A sentence within the appropriate range will be upheld so long as "there are other reasons consistent with the purposes and principles of sentencing." *Id.*

Tennessee Code Annotated section 40-35-104 authorizes alternative sentences, which may include a sentence of confinement that is suspended upon a term of probation or a sentence of continuous or periodic confinement in conjunction with a term of probation. T.C.A. § 40-35-104(c)(3), (4), (5). A defendant is eligible for probation if the sentence imposed is ten years or fewer. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). The Tennessee Supreme Court explicitly applied the abuse of discretion standard of review in *Bise* to alternative sentencing in *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence.").

A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options," if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guideline regarding favorable candidates is advisory. T.C.A. § 40-35-102(6)(D).

Tennessee Code Annotated section 40-35-103 requires that sentences involving confinement be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a Defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant;

T.C.A. § 40-35-103(1).

Although the Defendant's standard offender status and Class C felony conviction classification made him "a favorable candidate for alternative sentencing options," the trial court meticulously analyzed the Defendant's prior criminal history and explained why the court did not believe that the Defendant was a good candidate for alternative sentencing, citing his prior criminal record and alternative sentences. *See* T.C.A. § 40-35-102.

The trial court based its determination that the Defendant should be confined on the unsuccessful, frequent, and recent use of measures less restrictive than confinement on the Defendant and on the need for deterrence. The trial court concluded "that measures less restrictive than confinement have frequently and recently been applied to [the Defendant] without success." T.C.A. § 40-35-103(1)(C). The trial court reviewed the Defendant's investigation report and the presentence report, finding that the Defendant had already received two sentences to be served on probation and that the Defendant failed to comply with the terms of his probation on at least two occasions. The Defendant failed a drug test by testing positive for marijuana and failed to appear in court for a traffic violation while on probation and on release for the charges in this case. Moreover, the Defendant tested positive for marijuana while on probation for a possession of marijuana conviction. This evidence supports the trial court's finding that measures less restrictive than confinement have not been successful when applied to the Defendant.

Additionally, the trial court relied on the need for deterrence in its determination to confine the Defendant. To sentence a defendant to imprisonment based on the need for deterrence, a trial court must rely on proof within the record that supports the conclusion that "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). The State did not present proof to support such a conclusion. Accordingly, we hold that the trial court improperly found that there was a need for deterrence because there was no proof in the record to support such a finding.

Although the trial court did not properly find that there was a need for deterrence, the trial court determined that the Defendant's "long history of criminal conduct" made imprisonment "necessary to protect society" and that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the [D]efendant." T.C.A. § 40-35-103. While the court found two reasons for imprisonment, the trial court was only required under the Sentencing Act to find one of the aforementioned reasons to

properly confine the Defendant to prison and deny alternative sentencing. Upon review, we conclude that the trial court did not abuse its discretion in denying the Defendant's request for an alternative sentence and imposing a sentence of confinement.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE